```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ERNERIS DIAZ,

                    Plaintiff,           04-CV-6242T
v.

JO ANNE B. BARNHART,                     DECISION
Commissioner of Social Security,         and ORDER

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff, Erneris Diaz ("Diaz") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI"). On February 18, 2005, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and on March 11, 2005, plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, this Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

## BACKGROUND

Plaintiff is a 68 year old woman with a tenth grade education. (Tr. 54) She alleges that she has been disabled since April 1, 2001 because of high blood pressure, allergies, dizziness and

headaches. (Tr. 73)  On April 11, 2001, Diaz filed an application for Disability. (Tr. 54-57) Because plaintiff is a legal alien, pursuant to SSR 03-3(P), she qualifies for social security benefits after age 65 only if she can prove disability.  Her application was denied initially on October 25, 2001 (Tr. 24-27) and on reconsideration on January 31, 2001 (Tr. 41)  Plaintiff requested a hearing which was held on July 2, 2003 at which plaintiff appeared before an Administrative Law Judge ("ALJ") and was represented by counsel.  By decision dated August 25, 2003, the ALJ found Diaz was not disabled. (Tr. 10-20)  Plaintiff requested review by the Appeals Council.  The decision of the ALJ became final when the Appeals Council denied review on March 29, 2004. (Tr. 4-6)  Plaintiff commenced this action on May 27, 2004 claiming that she was disabled by depression, photosensitivity, allergies, hypertension and depression.

A.  Medical Background

On August 9, 2000, plaintiff was examined by neurologist Dr. Stern regarding symptoms of dizziness. (Tr. 115)  Plaintiff reported that she had experienced dizziness for 20 years which was sometimes associated with nausea.  Diaz also reported tinnitus in the right ear and headaches. (Tr. 115)  A CT head scan was "normal" and Dr. Stern could not find a cause to her complaints. (Tr. 116) He recommended a formal ideogram and suggested that Diaz would have to live with the symptoms because her exam was normal and the long

2

duration of the symptoms indicated that there was no underlying problem. (Tr. 116)

Medical records dated February 16, 2001 also indicate that the tinnitus was "not that troubling". (Tr. 117)  Plaintiff's medical records from 2001 also showed that she suffered from seasonal allergies but by May were "100% better" with medication.  (Tr. 119) Diaz reported feelings of depression in May, 2001 and expressed a willingness to see a psychologist. (Tr. 120)

Dr. Jeffrey Laduca, a dermatologist of Strong Memorial Hospital, treated plaintiff since April 1994 for hyperpigmentation of the skin.  He diagnosed melasma and possible photo-related piuritus. (Tr. 146)  He prescribed Azelex cream and sun block. (Tr. 147)  Dr. Laduca noted that from a dermatologic point of view, plaintiff had no restrictions on her ability to do work related physical activities. (Tr. 149)  Similarly, Dr. Laduca indicated in a follow-up assessment on April 22, 2003 that plaintiff was not limited in her ability to lift or carry, stand or walk, sit or push or pull and could frequently climb, balance, kneel, crouch, crawl and stoop. (Tr. 219-220)  Dr. Laduca did note, however, that plaintiff's melasma required vigilant sun avoidance or sunblock. (Tr. 222)

On May 16, 2001, Dr. Sutton of Clinton Family Health Center completed a form at the request of New York State Office of Temporary and Disability Assistance regarding Diaz.  The form indicated that Diaz was treated for tinnitus, depression and high

blood pressure at the clinic. (Tr. 108-109)  Plaintiff was found to have chronic conditions that cause her to be "moderately limited" in her abilities to walk, sit, lift or carry, push or pull and to use stairs.  No limitations were listed for standing, seeing, hearing, speaking, or using hands. (Tr. 108)

Diaz was examined by Dr. Samuel Balderman on October 1, 2001 for a disability examination with the main medical problems presented of headaches and dizziness. (Tr. 171)  During the examination, Diaz stated that she could walk a mile and could stand for 30 minutes and sit without limitation. (Tr. 171)  Further, Diaz could lift and carry 20 pounds comfortably. (Tr. 171)  Dr. Balderman concluded that plaintiff's prognosis was "good", that the physical examination was "unremarkable" and he placed no physical limitations on her.  (Tr. 173)

A Physical Residual Functional Capacity Assessment was completed on October 25, 2001. (Tr. 175-182)  No exertional limitations were found for plaintiff. (Tr. 176)  Neither were postural, manipulative, visual, communicative or environmental limitations found. (Tr. 176-180)

On October 4, 2002, plaintiff was examined at Via Health at Rochester General Hospital as a follow up examination for her high blood pressure.  Dr. James Sutton noted that plaintiff's LDL level was down to 132 from 173 in April, 2002 which he credits to plaintiff's dietary management. (Tr. 231)

4

On April 22, 2002, plaintiff was admitted to outpatient services of Unity Health System for depression. (Tr. 187) Plaintiff stated that she had bouts of depression since age 55 when she was divorced after 34 years of marriage. (Tr 185) Diaz was treated with medications prescribed by her primary care physician, Dr. Cruz, such as Zoloft and Ambien which plaintiff claimed helped. However, she stopped using them when she felt better. (Tr. 185) Plaintiff claimed that she has trouble with concentration and motivation. (Tr. 185) She was again placed on Zoloft and Ambien. (Tr. 203) On June 12, 2002, plaintiff reported that the Zoloft helped her feel less depressed and less anxious but her sleep was poor. (Tr. 206)

Medical notes from plaintiff's examination on January 6, 2003 indicate that plaintiff was "cheerful" reporting that she had a "very rewarding holiday season." (Tr. 209) There was "no evidence of depression" and was generally "optimistic and positive about life." (Tr. 209) Similarly, on February 6, 2003, plaintiff reported that she was "doing very well." (Tr. 210) Diaz decided not to take the antidepressant anymore but continued with the Ambien. Plaintiff reported that she loves her job as a foster grandparent and that she was planning a visit to her family in Cuba. (Tr. 210) The medical report indicated that there was "no evidence of depression, anxiety, distress, suicidal ideation or delusions." (Tr. 210) Plaintiff failed to go to her February 18, 2003 or March 18, 2003 appointments.(Tr. 211-212) On March 17, 2003, plaintiff reported that she was no longer taking her medications but was doing well.

Again, the medical notes indicate that plaintiff had no depression. (Tr. 213)

Dr. Teresa Chang of the Via Health at Rochester General Hospital completed a form regarding plaintiff's limitations to do work related activities. Dr. Chang concluded that Diaz could occasionally lift up to 20 pounds, frequently lift up to 10 pounds and stand at least two hours in an eight hour work day. (Tr. 263) Dr. Chang found no limitations to amount of sitting plaintiff could do in a day but did limit her lower extremities to pushing and pulling due to pain. (Tr. 264) Diaz was unlimited in her manipulative and visual/communicative abilities. (Tr. 265) Dr. Chang listed plaintiff's diagnoses as mild allergies, moderate depression, and moderate to severe high blood pressure. (Tr. 287) Dr. Chang listed plaintiff's medications as singulair, zoloft, toprol, zestoretic and zantac. (Tr. 268)

B.  <u>Non-Medical Background</u>

Diaz lives alone in an apartment. She speaks only Spanish and has a 10th grade education. (Tr. 185) She cooks every day but her son helps her with grocery shopping. (Tr. 81) Diaz is able to perform daily household chores such as washing dishes, making her bed but has her daughter help with the heavier tasks of cleaning the bathroom. (Tr. 81) Diaz testified that she cleans, cooks, washes dishes, does the laundry, makes beds and vacuums. (Tr. 196) She spends her days watching television, reading, sewing, visiting her daughter or volunteering as a foster grandparent. (Tr. 81)

Diaz's prior work experience was as a receptionist and as a seamstress in Cuba prior to her immigration to the United States in 1993. (Tr. 82)  For five or six months after she came to the United States, plaintiff worked as a sewing machine operator in a factory. (Tr. 295)  She volunteered as a foster grandparent through the Monroe County Foster Grandparent Program, a federally funded program, for which she received a small stipend of $2.55 per hour. (Tr. 62)  Although Diaz made approximately $102 every two weeks, the stipend and assistance benefits of transportation and a daily meal are not considered income for purposes of determining eligibility for any state, local or federal program or service. P.L. 93-113.

Diaz testified at the hearing in July, 2003 that she had been missing a lot of time from her volunteer work as a foster grandparent in the past two years because she wasn't feeling well. (Tr. 288)  Diaz claimed that the main factor in her not being able to work is dizziness and her inability to sleep at night. (Tr. 289) She takes Citrine to sleep. (Tr. 290)  Diaz believes that she cannot sleep because she is depressed. (Tr. 290)  She takes Toprol for depression. (Tr. 291)  Diaz also testified that she was experiencing stomach problems for which she was taking Ranitidine. (Tr. 292)

## DISCUSSION

Pursuant to 42 U.S.C.§ 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980).  A disability is defined as

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to use the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits her ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work. If she is not, the fifth and final inquiry is whether the claimant can perform any other work. The

burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

Here, the ALJ followed the five step procedure denying benefits at step two. In his decision dated August 25, 2003, the ALJ found that plaintiff (1) had not engaged in substantial gainful activity since the onset date; (2) suffered from depression, hypertension, allergies and melasma which were all controlled; (3) did not have an impairment that significantly limits her ability to perform basic work-related activities, therefore does not have an impairment that meets or equals one of the listed impairments listed in Appendix 1, subpart P, Regulation No. 4; and (4) was not under a "disability" as defined by the Social Security Act. (Tr. 16-20)

At step two, the agency determines whether the claimant's alleged impairments are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." Id. §§ 404.1521(a); 416.921(a). Only "slight" impairments, imposing only a "minimal effect on an individual's ability to work" are considered "not severe:"

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's

9

>age, education, or work experience were specifically considered.

SSR 85-28.

Case law prescribes a very limited role for step two of the analysis. Step two is designed "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." Bowen v. Yuckert, 482 U.S. 137, 156, 107 S.Ct. 2287 (1987)(O'Connor, J., concurring). Step two may not do more than "screen out de minimus claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)

Plaintiff alleges that the ALJ failed to recognize that her impairments are severe. Having carefully reviewed the medical records, this Court finds that the ALJ's determination that plaintiff's alleged impairments are not "severe" within the meaning of the regulations is supported by substantial evidence.

With respect to plaintiff's hypertension, the medical evidence indicates that her symptoms were manageable with medication. Her blood pressure readings were essentially within normal limits. Indeed on July 14, 2000, her blood pressure was 110/80. (Tr. 121) Even after the alleged onset date of disability, Dr. Romero observed on May 20, 2001 that plaintiff's blood pressure was 120/80 and was stable. (Tr. 119) Similarly, Dr. Cruz recorded a blood pressure reading of 110/80 on October 5, 2001 and noted that plaintiff's heart had regular rhythm. (Tr. 238) Moreover, there was absolutely

no evidence of organ damage or any other complications arising from her hypertension.

Likewise, there is substantial evidence in the record to support the ALJ's conclusion that plaintiff's depression is not a severe impairment. Although plaintiff was being treated for depression, her own doctors and therapist observed that Diaz felt better with no signs of depression even after plaintiff stopped taking the medication. For example, on June 12, 2002, only two months after initiating treatment, Dr. Banzhaf noted that plaintiff felt less depressed and anxious. (Tr. 191)

Within a year, the medical records indicate that all signs of depression vanished. Medical notes from plaintiff's examination on January 6, 2003 indicate that plaintiff was "cheerful", that there was "no evidence of depression" and Diaz was generally "optimistic and positive about life." (Tr. 209) Similarly, on February 6, 2003, plaintiff reported that she was "doing very well," and the medical examiner found that there was "no evidence of depression, anxiety, distress, suicidal ideation or delusions." (Tr. 210) The most recent medical records regarding depression indicate that plaintiff had no depression. (Tr. 213)

Plaintiff's melasma was also well controlled by medication and did not limit her ability to perform basic work activities. The condition was treated by a dermatologist and plaintiff controlled the problem by using medication and avoiding sun exposure. (Tr. 153)

By April, 2003, plaintiff's own physician assigned no limitations due to melasma other than recommending that plaintiff avoid sunlight and use sun screens. (Tr. 219-222)

Finally, plaintiff's seasonal allergies were also controlled by medication. (Tr. 119) The record is devoid of evidence that plaintiff was unable to perform basic work activities due to her allergies.

The combined effect of claimant's impairments do not significantly limit plaintiff's ability to perform basic work functions. Accordingly, the ALJ properly found that Diaz did not have a severe impairment.

## CONCLUSION

I find substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the decision of the Commissioner denying plaintiff's disability claim is affirmed, the plaintiff's motion for summary judgment is denied, the defendant's motion for judgment on the pleadings is granted and the complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         July    , 2005